UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LIESCHEN CLOVER d/b/a ECLECTIQUE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-4339** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION "K"(3)** |

## ORDER AND OPINION

Before the Court is the motion for summary judgment filed on behalf of defendant Allstate Insurance Company (Doc. 26). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion.

### BACKGROUND

Lieschen Clover and Catherine Simon operated Arquitectonica Designs, L.L.C., a home design and furnishings store, at 1925 Sophie Wright Place in New Orleans in a space leased from Crescent Investment Holdings, L.L.C. ("Crescent"). As a result of disputes between them, Ms. Simon left the business. Thereafter Ms. Simon filed suit against Ms. Clover in the First City Court for the City of New Orleans seeking reimbursement for certain money expended for the benefit of the business.

Following Ms. Simon's departure from the business, Ms. Clover maintained the lease with Crescent, changed the name of the business to Eclectique, and retained Jeanne Barros as the store manager. Additionally, Ms. Clover obtained an Allstate Customizer Business Policy which provides in pertinent part:

> Coverage A– Business Property
>
> 2. We do not cover any loss or damage caused by:

    a. Delay or Loss of Market

    We will not cover any losses caused by any delays or because you have lost customers for any reason.

. . .

Optional Coverages

. . .

Part Three– Loss of Income-Rents

When coverage is shown in the Declarations for Loss of Income, we will pay up to 12 consecutive months from the time of loss for:

1. Your loss of income resulting from a covered loss but not to exceed the actual reduction in net income from the operation of the business plus charges and expenses which necessarily continue during the interruption of business.  In determining your loss, we will consider the normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss.  We will not pay for more than your actual loss of net income for the shortest time required to repair or replace your property with the exercise of due diligence and dispatch.

. . .

4. The reasonable and necessary loss of net income or net rental income for up to two weeks should civil authorities prohibit you from occupying the insured premises due to a loss at the immediately adjacent premises, caused by a peril we insure you against.

On August 27, 2005, Ms. Clover and Ms. Barros planned to move from a rental house on Carondelet Street to a rental house on Coliseum Street.  However, due to the approach of Hurricane Katrina they were unable to move. Instead they readied the Eclectique store for the storm and then evacuated to Florida.

Within days of Hurricane Katrina, Ms. Clover learned through a friend that the store had not

flooded. Thereafter Ms. Clover mailed her key to Mike Husar, a friend in New Orleans, who entered the store and discovered that the some of the store's inventory store had sustained some damage. On September 2, 2005, Ms. Clover filed a claim with Allstate to recover under her policy.

In early October 2005, Ms. Clover learned that the Coliseum Street house had been severely damaged in the storm and was not habitable and that the landlord of the Carondelet Street house was demanding that she remove her possessions from that house because it had been rented to someone else.

Ms. Clover returned to New Orleans on October 19, 2005, followed by Ms. Barros on October 20, 2005. On October 21, 2005 Ms. Clover and Nicole Prestwood, an Allstate adjuster, inspected the store and confirmed that although there had been no flooding, there was some damage to the store's fixtures and inventory, and to the building, presumably due to a roof leak. Apparently relying on Ms. Prestwood's advice, Ms. Clover decided to remove the fixtures and inventory from the damaged building. After being unable to locate storage space in New Orleans, Ms. Clover rented two trucks and moved the Eclectique's fixtures and inventory, as well as her household furnishings to Pompano Beach, Florida. After arriving in Pompano Beach, Ms. Clover put the fixtures and inventory from her store in storage.

Allstate paid Ms. Clover $2,524.20 for the damages sustained by the contents of the store as well as the $5,000.00 limit of the policy for relocation expenses. In response to Ms. Clover's claim for damages under the loss of business income portion of the policy, Allstate offered plaintiff two weeks of lost net income because civil authorities had prohibited Ms. Clover from occupying the premises following Hurricane Katrina. Allstate requested that Ms. Clover submit documentation supporting the quantum of her lost business income to an accounting firm designated

by Allstate. Being dissatisfied with the offer of only two weeks lost income, Ms. Clover declined to provide Allstate with any documentation establishing the quantum of lost income.

Thereafter Ms. Clover filed suit against Allstate, and others not relevant here, seeking damages for loss of business income, mental distress, and punitive damages for willful, wanton, and malicious disregard of her rights. Allstate filed a motion for summary judgment contending that plaintiff is not entitled to a payment for loss of business income because following Hurricane Katrina Ms. Clover closed her store for personal reasons, not because of damages resulting from a covered peril, and relocated to Florida with no intention of returning to New Orleans and reopening the store. Additionally, Allstate seeks dismissal of plaintiff's other claims asserting that because Allstate reasonably denied plaintiff's claim for loss of business income, her other claims fail as a matter of law.

## LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts. "[M]ere allegations or denials" are not sufficient to defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U .S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995). However, courts are bound to construe summary judgment evidence in the light most favorable to the non-moving party. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Allstate contends that plaintiff's claim for loss of business income must be dismissed because plaintiff has not produced any evidence establishing that she suspended her business operations as a result of physical damage to the leased premises directly caused by a peril covered under the policy, i.e., Hurricane Katrina, or because of direct physical damage to her business contents as a result of a covered peril. Allstate asserts that plaintiff permanently closed her business and did not permanently return to New Orleans for personal reasons. In support of this position Allstate relies upon Ms. Clover's affidavit, filed in the First City Court proceedings, which states in pertinent part: "I permanently closed the store after Hurricane Katrina as my rental house in New Orleans had been destroyed." Allstate also points to Ms. Clover's deposition testimony that "I knew [Louisiana] wasn't the state to stay in . . ." Ex. 35-2, p. 24. Additionally, Allstate relies on the affidavit of Christine

Cannizaro, an Allstate adjuster who handled plaintiff's loss of income claim.  Ms. Cannizaro'a affidavit states in pertinent part that "[d]uring the investigation of the Claim, Ms. Lieschen Clover informed me that she was relocating to the state of Florida, that she was closing down Eclectique in New Orleans, and that she was relocating the store to the state of Florida because the market in New Orleans was destroyed."  Doc. 26-10, Exhibit E, p.2.  Plaintiff disputes that portion of Ms. Cannizaro's affidavit pointing out that the relevant entry in the Allstate Claims diary states that Ms. Cannizaro spoke to both Ms. Clover and Ms. Barros that day and that the entry does not indicate that it was Ms. Clover who represented that the store was being relocated because the market in New Orleans had been destroyed.  The Court notes that the claims diary as filed is not competent summary judgment evidence.  Therefore, it cannot be relied upon to create a genuine issue of material fact.

To establish that plaintiff did not permanently close the store due to damage to the leased premises caused by a covered peril under the policy, i.e., Hurricane Katrina,  Allstate offers the affidavit of Huyen Nguyen, a co- managing member of Crescent.  Ms. Nguyen's affidavit states that the building at 1925 Sophie Wright Place "suffered no flood damage" and "suffered minor wind-related damage."  Additionally, Ms.  Nguyen's affidavit attests that:

- "Neither Clover, nor anyone on her behalf, contacted Crescent Investment after August 29, 2005, except for one time on October 28, 2005.  At that time, Clover informed Crescent Investment that she was moving her business to Florida. Clover did not tell anyone at Crescent Investment that she intended to come back to Louisiana and continue renting the Property.  Clover did not contact Crescent Investment again until December 2007";
- "Neither Clover, nor anyone on her behalf, contacted Crescent after August 29, 2005, to inquire whether there were any damages to the Property as a result of Hurricane Katrina.  On October 28, 2005, Clover did not inquire about the damage to the building"; and
- "Neither Clover, nor anyone on her behalf, contacted Crescent

6

>   > Investment after August 29, 2005, to inquire whether any repairs needed to be made or had been made to the Property as a result of Hurricane Katrina."

Doc. 26-8, Exhibit C. p.2.

Plaintiff disputes that portion of Ms. Nguyen's affidavit stating that the only time she contacted Crescent following Hurricane Katrina was on October 28, 2005. In an attempt to dispute that portion of Ms. Nguyen's affidavit, Ms. Clover has submitted her cell phone records which she alleges document an October 14, 2005 call to Ms. Nguyen and calls five calls to Hang Nguyen[1] between October 28, 2005 and March 22, 2006. Ms. Clover asserts that Hang Nguyen is a co-managing member of Crescent. As submitted, Ms. Clover's non-authenticated telephone records are not competent summary judgment evidence under Rule 56. Moreover, even if the telephone records were competent Rule 56 evidence, the fact that calls were made by Ms. Clover to Crescent does not in and of itself create a genuine issue of material fact concerning whether Ms. Clover closed her store due to damage to the building resulting from Hurricane Katrina. Ms. Clover has not provided any evidence identifying the specifics of her conversations with Crescent's co-managing members. However, in her deposition, Ms. Clover testified that "our main concern was we couldn't keep our goods in the store in that location. It was dangerous." Doc. 35-2, Exhibit G, p. 19. Ms. Clover also testified that "[w]hen you've got white upholstered goods, just about all the upholstery was white or off white, you can't have stuff falling from the ceiling, rain drops, brown rain drops." *Id*. at p. 22.

It is undisputed that the building where the store was located sustained some wind damage to the roof as a result of Hurricane Katrina, and that water leaking into the building damaged some

---

[1] Ms. Nguyen's affidavit identifies Hang Nguyen as a co-managing member of Crescent.

of the store's inventory. Those undisputed facts taken together with Ms. Clover's testimony that there was concern that the contents could not remain in the store because of the possibility of further damage is sufficient to create a genuine issue of material fact concerning whether Ms. Clover closed her store due to damage to the building resulting from Hurricane Katrina.

Allstate sought summary judgment on plaintiff's other claims contending that because plaintiff had no claim for loss of business income, her other claims failed as a matter of law. Because plaintiff's claim for loss of business income remains viable, Allstate is not entitled to summary judgment on plaintiff's remaining claims. Accordingly, the motion for summary judgment on the loss of business income claim is denied.

New Orleans, Louisiana, this 26th day of March, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE